IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**TRAVIS RHODES**, as Personal
Representative of the Estate of
**TIMOTHY E. RHODES**,

        **Plaintiff,**

v.                         Civil Action No. 2:19-cv-626

**DEPUTY SHERIFF MICHAEL KING**,
and the **ROANE COUNTY
COMMISSION,**

        **Defendants.**

## AMENDED COMPLAINT

Travis Rhodes, as Personal Representative of the Estate of Timothy E. Rhodes, deceased, for his Amended Complaint against Defendants Deputy Sheriff Michael King and the Roane County Commission, states as follows:

1. Plaintiff Travis Rhodes is a resident and citizen of Jackson County, West Virginia, and is the duly appointed and acting Personal Representative of the Estate of Timothy E. Rhodes ("Timmy" or "Timmy Rhodes").

2. Defendant Deputy Sheriff Michael King ("Defendant King"), upon information and belief, is a resident of Roane County, West Virginia, and is employed by the Roane County Commission.

3. Defendant Roane County Commission ("Defendant RCC") employed, at all times relevant herein, Defendant King and Sheriff Todd Cole to engage in law enforcement duties in Roane County, West Virginia, and as such, Defendant RCC is liable for the negligent and

1

reckless conduct, acts, and omissions of Defendant King and Sheriff Cole, as well as for its own and its other employees' acts of negligence and recklessness.

## JURISDICTION AND VENUE

4. Plaintiff's claims in this matter arise out of a horrific and entirely unnecessary shooting incident that occurred in the afternoon hours of February 22, 2019, on Ambler Ridge Road in Roane County, West Virginia. Plaintiff's decedent—unarmed on his own property—was tragically and fatally shot by Defendant King without justification. This Court has original jurisdiction over this matter pursuant to federal question jurisdiction codified at 28 U.S.C.A. § 1331 because Plaintiff asserts a violation of Timmy Rhodes' rights under 42 U.S.C.A. § 1983. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.A. § 1367.

5. Venue is proper in this Court in accordance with 28 U.S.C.A. § 1391 because the causes of action arose in Roane County, West Virginia, and all Defendants routinely transact business in Roane County, a county within this Court's district and division.

## FACTS

6. On February 22, 2019, Timmy Rhodes and his fiancé, Tammy Nichols ("Tammy" or "Ms. Nichols"), both residents of Roane County, West Virginia, drove to Timmy Rhodes' childhood home on Ambler Ridge Road (the "Rhodes Home") to collect mail and other items.

7. The long-established and accepted entrance to the Rhodes Home is through use of a roadway that passes in front of the neighboring home of Beth and Robert Young (the "Young Home").

8. When Mr. Rhodes turned his vehicle onto the roadway to proceed to the Rhodes Home, he necessarily passed the Young Home. According to Mrs. Young, Mr. Rhodes' truck

tires spun in the roadway and kicked up rocks as the vehicle proceeded forward, and Mrs. Young called 911 to complain about the matter.

9. During Mrs. Young's call to 911, she did not indicate that Mr. Rhodes had been aggressive in any way, only that his driving had caused the tires of his truck to spin and kick up rocks on the Young's property.

10. The 911 operator told Mrs. Young that a deputy would be dispatched.

11. Meanwhile, Timmy Rhodes drove away from the Young Home to his family property, and Timmy exited the vehicle to retrieve some items from the house, while Ms. Nichols remained in the vehicle.

12. Minutes later and while acting within the scope of his employment to address what was, at most, a possible minor property damage claim, Defendant King responded to Mrs. Young's 911 call and arrived on the property.

13. Defendant King was not wearing his Sheriff's uniform. Instead, he was casually dressed wearing blue jeans, a white t-shirt, and a bullet proof vest. He was armed with a shotgun, which had to be set down or held with two hands. Upon information and belief, Defendant King was not wearing his sheriff's duty belt, did not have his badge displayed, did not have handcuffs, and did not have a handgun or holster.

14. While Defendant King observed the scene from a distance, Timmy returned to the vehicle and was scared in light of, among other things, Defendant King's reputation for using unnecessary force. Timmy informed Tammy that Defendant King had arrived on the property and was located behind their truck holding something.

15. Tammy then turned and saw Defendant King leaning against a tree with an object in his hand.

16. For unknown reasons, Defendant King then advanced quickly onto the Rhodes' property and pointed the shotgun at Timmy and Tammy and shouted orders at them to exit the truck and get on the ground. From the beginning, Defendant King's entire approach to the situation was wholly improper and in violation of commonly accepted law enforcement practices and procedures as well as Timmy's rights afforded under West Virginia law, and the Constitutions of West Virginia and the United States.

17. Tammy exited the truck through the passenger-side door and knelt on the ground beside the truck.

18. Defendant King continued to approach the truck, screaming at Timmy to exit the truck and get on the ground. Timmy also complied and exited the vehicle.

19. Scared and confused, Timmy asked Defendant King why Defendant King was ordering them out of their vehicle, because he was peacefully on his family's property.

20. Defendant King continued to advance toward Timmy, aggressively screaming at him to get on the ground. Defendant King threatened Timmy and told Timmy that it would not bother him to "blow your fucking brains out" if Timmy did not comply.

21. While Timmy was standing beside the driver's side door, Defendant King, who is physically much bigger and stronger than Timmy, shoved Timmy to the ground.

22. Timmy Rhodes did not resist Defendant King in any way.

23. Defendant King then walked around the vehicle and positioned himself so that he could see both Timmy and Tammy at the same time.

24. Defendant King continued to point his shotgun at Timmy and aggressively ordered Timmy to remain on the ground. Tammy could see that Timmy was lying on his back.

25. Timmy pulled his legs up in a motion that appeared to Tammy as though he was going to try to stand up. However, Timmy did not present any physical threat to Defendant King or attempt to take Defendant King's shotgun at any time. Defendant King fired his shotgun at close range, shooting Timmy in his face. Timmy was unarmed, was not lawfully under arrest, and was in a completely defenseless position.

26. Tammy asked Defendant King if Timmy was dead. Defendant King replied, "Not yet, but he will be."

27. Defendant King then directed his attention to Tammy. He ordered her to stay on the ground. At some point later, he directed her to stand up and walk to the rear of the vehicle facing away from him, to kneel and place her hands on her head. Despite her grief and concern for Timmy, Tammy complied in fear for her life.

28. Tammy waited with her hands above her head, while Timmy suffered and bled to death only feet away.

29. Minutes after Timmy was shot, Defendant King called-in to 911 dispatch and reported that Timmy was still breathing.

30. After suffering devastating injuries from the shotgun blast, Timmy died.

31. As a direct and proximate cause of Defendant King's unwarranted and unprovoked use of deadly force, Timmy Rhodes was killed.

32. Upon information and belief, prior to the death of Timmy Rhodes, Sheriff Cole and Defendant RCC had received numerous complaints from citizens about other instances of excessive force and threats of lethal force by Defendant King, thereby alerting RCC and Sheriff Cole that Defendant King was routinely not following proper protocol regarding the use of force and threats of lethal force during his encounters with members of the community.

33. Upon information and belief, in at least one complaint, in the autumn of 2018, Sheriff Cole was specifically advised by a man that Defendant King had unnecessarily pulled his weapon while apprehending the man's son. The man asked Sheriff Cole who Defendant King's supervisor was, and Sheriff Cole said that he himself was. The man asked why Sheriff Cole was letting Defendant King pull his weapon and threaten people all over the county without justification. Sheriff Cole told the man that he would "handle it."

34. Upon information and belief, Sheriff Cole did not handle it. In fact, upon information and belief, Sheriff Cole did not investigate the man's allegations regarding Defendant King's treatment of his son, which were full of proof, as a proper investigation would have revealed, including hospital records and photographs concerning the laceration on the man's son's forehead from where Defendant King had forcefully placed his weapon against the man's head and struck him with it. Sheriff Cole did not take any corrective action with respect to Defendant King.

35. Upon information and belief, other instances and citizen complaints of the use of excessive force, excessive threats, and dangerous conduct by Defendant King occurred on the premises of the Sheriff's Department, and still others were witnessed by other members of the Sheriff's Department.

36. One such complaint relates to an incident occurring on 10 April, 2013, when Defendant King pulled over School Bus # 6, which was then en route to Roane County High School.

37. Defendant King detained a minor child, without charge, taking physical custody of him by removing him from the school bus and placing him in his cruiser because the child's hat had flown out of the school bus window.

6

38. Defendant King did not call parents during or after the time that he took physical custody of their child by removing him from the school bus.

39. In his written complaint to Defendant RCC and Sheriff Cole, the minor relates that he felt scared and was intimidated by Defendant King.

40. Sheriff Cole and Defendant RCC had a duty to investigate Defendant King's role in detaining the minor child, an incident which constituted an unreasonable seizure of his person and a violation of his rights.

41. Instead, Sheriff Cole's investigation of the complaint relating to Defendant King's unlawful detention of the minor child culminated in a letter to Defendant RCC concluding that Defendant King had "every right to perform a traffic stop on the school bus" to investigate a "criminal violation" of "WV Code 17C-14-14."

42. Defendant King's conduct in detaining the child and removing him from the bus was in violation of clearly established laws, notwithstanding the possibility that misdemeanor littering may have occurred. Defendant King had not witnessed the actual act, and the presumption of both relevant littering statutes is that the operator of a motor vehicle is responsible for the littering. Defendant King had no authority to do anything other than issue a citation and summons to the minor child even if he had suspicion or probable cause to believe that a (very minor, if that) misdemeanor act of littering had occurred.

43. W. Va. Code confers no authority on law enforcement officers such as Defendant King to either detain or arrest any citizen on suspicion of littering from a moving vehicle.

44. Defendant RCC has also had in its custody, since April 2014, records relating to a formal complaint against Defendant King by a woman who called 911 to report that Defendant

King was—for no lawful purpose—commanding her to leave the premises of Walton Middle School where her child was attending a dance.

45. In her call to 911, the mother relates that Defendant King had his hand on his gun, that he was commanding that she leave school property, and that he was physically preventing her from obeying the unlawful command that he was yelling at her.

46. In her subsequent written complaint to the Roane County Sheriff's Department, the mother relates that she was scared Defendant King's actions towards her made her feel unsafe.

47. This was the second formally documented incident in a single year involving Defendant King's practice of threatening and intimidating a law-abiding citizen pursuant to no lawful authority, with no probable cause to either detain or arrest them, and in connection with no law-enforcement purpose.

48. The incident complained of by the mother was the second incident in a single year that would have alerted Defendant RCC and Sheriff Cole to Defendant King's pattern and practice of using the authority of his position as a police officer, and in this case his ready access to his service firearm, to issue verbal commands to citizens who were clearly not committing crimes.

49. Sheriff Cole failed to adequately investigate this incident. Instead, he made inquiries with an assistant principal of the school who had interviewed a child present, as well as the second-hand information provided to him by the parent of a child present and concluded that Defendant King had not "used profanity or said anything inappropriate" and dismissed the mother's complaint by declaring that it was "without merit and shall be unfounded." Sheriff Cole's investigation also turned up that Defendant King had ordered the mother to leave the

premises and that the mother was in the act of picking up her child from a dance and was actually attempting to keep peace between her child and a friend of another child of hers, who were having a dispute. In other words, Sheriff Cole learned that Defendant King was issuing unlawful orders with no basis. Defendant King only happened to be present because his child attended the same dance. He had not been called to the scene and there was no suspicion or reason to believe that any criminal conduct was occurring or had occurred that required law enforcement intervention.

50. Upon information and belief, Sheriff Cole and Defendant RCC failed to take any action in response to the complaints received regarding Defendant King's repeated and negligent and reckless use of excessive force.

51. As a direct and proximate cause of Sheriff Cole's and Defendant RCC's failure to act with regard to their actual knowledge of Defendant King's past failures to follow established law enforcement procedures and protocols prohibiting the use and threatened use of such dangerous and excessive force during routine interrogations and arrests, Defendant King was permitted to respond to the property incident on Ambler Ridge Road on February 22, 2019, and permitted to again use unwarranted and unprovoked excessive force causing the death of Timmy Rhodes, an unarmed individual.

**COUNT I – STATE-LAW NEGLIGENT AND RECKLESS CONDUCT IN VIOLATION OF CLEARLY ESTABLISHED LAWS – DEFENDANT KING**

52. Plaintiff repeats and realleges the allegations contained in paragraphs 1-51 of this Complaint as if set forth fully herein.

53. Defendant King was negligent and reckless in the manner in which he approached Timmy Rhodes—wielding a shotgun, dressed in civilian clothes with a bullet-proof vest, not identifying his reason for approaching Timmy, and threatening to blow Timmy's "fucking brains

out"—while on Timmy's own property in response to a 911 call and complaint that, if true, constitutes at most misdemeanor misconduct. Defendant King's approach created reasonable fear and apprehension in Timmy Rhodes given that Timmy knew he had not done anything to warrant such an approach, and increased the likelihood of a misunderstanding, as well as increasing the likelihood of a lethal shooting through accident, misunderstanding, or impulse.

54. Defendant King was negligent and reckless in shoving Timmy to the ground when Timmy asked why he was being asked to get on the ground but made no aggressive move or step or action towards Defendant King.

55. Defendant King was negligent and reckless in shooting Timmy in the face while Timmy was in a defenseless and non-threatening position.

56. Defendant King is an agent and employee of Defendant RCC. At all times referenced herein, Defendant King was acting within the scope of his agency or employment with Defendant RCC. Accordingly, Defendant RCC is strictly and vicariously liable for the acts of Defendant King pursuant to W. Va. Code § 29-12A-1 *et seq.* as referenced by the above facts and allegations in this Complaint.

57. These acts and omissions of Defendant King violated Timmy Rhodes' constitutional rights, including, but not limited to, the right to be free from unreasonable searches and seizures and the right to due process prior to the deprivation of life and liberty protected by the West Virginia Constitution, Article III, Sections 2, 3, and 6, and also protected by the Fourth and Fourteenth Amendments of the United States Constitution.

58. These constitutional provisions and long-standing and clearly established cases and precedent from the Supreme Courts of West Virginia and the United States interpreting them

provide the right to persons to be free from the use of excessive force by law enforcement officers during police investigations, interrogations, and apprehensions.

59. These constitutional provisions and long-standing and clearly established cases and precedent from the Supreme Courts of West Virginia and the United States interpreting them provide the right to persons to be free from the use of lethal force by law enforcement except when justified by the circumstances surrounding an interrogation, confrontation, or arrest.

60. Any reasonable and reasonably well-trained law enforcement officer would know that approaching an unarmed man suspected, at most, of a misdemeanor, with a shotgun, on the man's own property, demanding that he get on the ground, refusing to explain the reason for the officer's presence, and then shoving him to the ground under these circumstances constitutes excessive force, an unreasonable seizure, and a deprivation of liberty without due process in violation of the West Virginia and United States Constitutions.

61. Any reasonable and reasonably well-trained law enforcement officer would know that discharging a shotgun into the face of an unarmed man suspected, at most, of a misdemeanor, on the man's own property, while the man is in a defenseless position, under these circumstances constitutes excessive force, an unreasonable seizure, and a deprivation of life without due process in violation of the West Virginia and United States Constitutions, whether or not that man made a non-aggressive motion that might indicate an intent to stand up.

62. Timmy Rhodes was shot in the face and killed, and suffered prior to dying, as a direct and proximate result of the negligence and recklessness of Defendant King and the violation of his constitutional rights by Defendant King.

**COUNT II – STATE-LAW NEGLIGENT AND RECKLESS CONDUCT IN VIOLATION OF CLEARLY ESTABLISHED LAWS – DEFENDANT RCC**

63. Plaintiff repeats and realleges the allegations contained in paragraphs 1-62 of this Complaint as if set forth fully herein.

64. Defendant King is an agent and employee of Defendant RCC. At all times referenced herein, Defendant King was acting within the scope of his agency and employment with Defendant RCC. Accordingly, Defendant RCC is strictly and vicariously liable for the acts of Defendant King pursuant to W. Va. Code § 29-12A-1 *et seq*. as referenced by the above facts and allegations in this Complaint.

65. Roane County Sheriff Todd Cole is an agent and employee of Defendant RCC. At all times referenced herein, Cole was acting within the scope of his agency and employment with Defendant RCC. Accordingly, Defendant RCC is strictly and vicariously liable for the acts of Cole pursuant to W. Va. Code § 29-12A-1 *et seq*. as referenced by the above facts and allegations in this Complaint.

66. Defendant RCC is liable for the negligent and reckless acts of Defendant King and Cole set forth in this Complaint, all of which occurred within the scope of their employment.

67. Sheriff Cole, and, independent of the conduct of Defendant King and Cole, Defendant RCC were negligent and reckless in several aspects, including but not limited to the following acts:

    a. failing to properly interview, evaluate, and screen Defendant King prior to hiring;

    b. failing to properly train Defendant King in proper police procedures and response procedures, including but not limited to, responding to property damage and nuisance/disturbance reports;

    c. failing to properly monitor and supervise Defendant King;

    d. negligently retaining Defendant King and keeping Defendant King employed; and

  e. failing to follow adopted and implemented policies and procedures for Defendant RCC with regard to investigation of multiple citizen complaints about Defendant King's pattern of use of excessive force and failing to take remedial action with regard to the complaints; and

  f. implementing customs, policies, and procedures, whether written or unwritten, condoning, encouraging, and demonstrating indifference to the use of excessive force by deputies, including Defendant King.

  68. Any reasonable and reasonably well-trained law enforcement supervisor would recognize that failing to take action to correct, discipline, or remove Defendant King based on the proven and alleged dangerous misconduct involving the unnecessary use of force and unnecessary threats of lethal force by Defendant King that occurred prior to the Timmy Rhodes shooting—and of which Sheriff Cole and RCC had knowledge—was likely to enable and encourage Defendant King in his excessive use of force and his continued and excessive threats of the use of non-lethal force, and would one day result in the unnecessary and unconstitutional killing of a citizen in violation of clearly established laws and constitutional provisions.

  69. Any reasonable and reasonably well-trained law enforcement supervisor would recognize that failing to take action to correct, discipline, or remove Defendant King based on the proven and alleged dangerous misconduct involving the unnecessary use of force and unnecessary threats of lethal force by Defendant King that occurred prior to the Timmy Rhodes shooting—and of which Sheriff Cole and RCC had knowledge—was itself a violation of clearly established laws and constitutional provisions.

70.     Timmy Rhodes was shot in the face and killed, and suffered prior to dying, as a proximate result of the negligence and recklessness of Sheriff Cole and RCC and the violation of his constitutional rights by Sheriff Cole and RCC.

## **COUNT III – DEPRIVATION OF RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 – ALL DEFENDANTS**

71.     Plaintiff repeats and realleges all of the allegations contained in paragraphs 1-70 as if set forth verbatim herein.

72.     The allegations specifically set forth in Count I, above, not only state a claim for relief against Defendant King under the laws of the State of West Virginia, but also under 42 U.S.C. § 1983, provided that Defendant King was acting under color of law at the time.

73.     Defendant King, at all times relevant to the allegations set forth in this Complaint, was acting under the color of his law enforcement duties as empowered by the Roane County Sheriff's Department and Defendant RCC.

74.     The allegations pertaining to Defendant RCC specifically set forth in Count II, above, not only state a claim for relief against Defendant RCC under the laws of the State of West Virginia, but also under 42 U.S.C. § 1983, because Defendant King's conduct not only occurred while acting under the aegis of the RCC, but also, upon information and belief, resulted directly from the express written or unwritten customs and policies of RCC.

75.     Sheriff Cole and Defendant RCC had actual knowledge through citizen complaints of a pattern of use of excessive force and threats by Defendant King.

76.     Upon information and belief, Sheriff Cole and Defendant RCC took no remedial, adverse, or other action against Defendant King in response to the excessive force complaints lodged by citizens against Defendant King.

77. In taking no action against Defendant King in response to the excessive force complaints lodged by citizens against and about Defendant King, Sheriff Cole and Defendant RCC created a custom of acceptance and encouragement of the use of excessive force.

78. As a direct and proximate result of the Defendants' actions in deprivation of the rights and privileges secured by the Constitution and laws of the United States, Timmy Rhodes was shot in the face and killed, and suffered prior to dying.

79. Defendants' acts and omissions, in violating Timmy Rhodes's rights, make Defendants liable to Plaintiff for compensatory and punitive damages, prejudgment and post-judgment interest, and an award of attorney fees and costs pursuant to 42 U.S.C. § 1983.

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

**WHEREFORE**, the conduct described herein of the Defendants, individually and collectively, served as the direct and proximate cause of the death of Timmy Rhodes. Therefore, Plaintiff demands judgment against the Defendants for all recoverable damages, including without limitations those damages permitted and set forth pursuant to the West Virginia Wrongful Death Act, W. Va. Code § 55-7-5 and § 55-7-6, and all damages available under 42 U.S.C. § 1983, including but not limited to:

  a. Damages in compensation for sorrow, mental anguish and solace which may include society, companionship, comfort, guidance, kindly office and advice of the decedent;

  b. Damages in compensation for the reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent;

  c. Damages in compensation for pain and suffering prior to death;

    d. Damages in compensation for loss of enjoyment of life;

    e. Expenses for the care, treatment and emergency response personnel incident to the shooting death of the decedent;

    f. Reasonable funeral expenses;

    g. Punitive damages;

    h. Prejudgment and post-judgment interest;

    i. Attorney fees and costs; and

    j. Such other and further relief as may seem fair and just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

    **TRAVIS RHODES**, as Personal Representative of the Estate of **TIMOTHY E. RHODES**, By counsel

    s/Benjamin D. Adams
    L. Dante' diTrapano, Esq. (WVSB #6778)
    Alex McLaughlin, Esq. (WVSB #9696)
    Benjamin D. Adams, Esq. (WVSB #11454)
    Calwell Luce diTrapano PLLC
    500 Randolph Street
    Charleston, West Virginia  25302
    (304) 400-6558/(304) 344-3684
    dditrapano@cldlaw.com
    amclaughlin@cldlaw.com
    badams@cldlaw.com

    and

    R. Booth Goodwin II, Esq. (WVSB #7165)
    Benjamin B. Ware, Esq. (WVSB #10008)
    Stephanie H. Daly, Esq. (WVSB #8835)
    Goodwin & Goodwin, LLP
    300 Summers Street, Suite 1500
    Charleston, West Virginia  25301
    (304) 346-7000/(304) 344-9692
    rbg@goodwingoodwin.com

bbw@goodwingoodwin.com
shd@goodwingoodwin.com