**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

TRAVIS RHODES, et al.,

           Plaintiffs,

v.                               CIVIL ACTION NO.   2:19-cv-00626

DEPUTY SHERIFF MICHAEL KING, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Michael King and the Roane County Commission's Partial Motion to Dismiss.  (ECF No. 12.)  For the reasons set forth below, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

*I.     BACKGROUND*

This civil action arises from the death of Timothy E. Rhodes ("Decedent") during an encounter with law enforcement on February 22, 2019.  (ECF No. 4.)  The Plaintiff, Travis Rhodes, as the personal representative of the Estate of the Decedent, filed this action against Deputy Michael King ("King") and the Roane County Commission (the "Commission") on August 29, 2019.  (ECF No. 2.)  Plaintiff filed an Amended Complaint on August 30.  (ECF No. 4.)

The following factual allegations are taken from Plaintiff's Amended Complaint.  On February 22, 2019, the Decedent and his fiancé, Tammy Nichols ("Nichols"), drove to the Decedent's childhood home (the "Rhodes Home").  (*Id.* at ¶ 6.)  As the Decedent turned into the home's shared driveway, the Decedent's truck's tires spun and "kicked up rocks."  (*Id.* at ¶ 8.)

This caused the neighbor whose home shared the driveway with the Rhodes Home, Beth Young, to call 9-1-1 and request law enforcement.  (*Id.*)  Mrs. Young did not indicate any aggressiveness or other misconduct by the Decedent to dispatch, only that he had spun the truck's tires upon entering the driveway.  (*Id.* at ¶ 9.)  The Decedent, upon arriving at the Rhodes home, left Nichols in the vehicle to retrieve some items from inside the home.  (*Id.* at ¶ 11.)

Several minutes later, Deputy King arrived at the Rhodes home in response to Mrs. Young's 9-1-1 call.  (*Id.* at ¶ 12.)  King was not wearing his Sheriff's uniform, and instead was "casually dressed" in blue jeans, a white t-shirt, and a bullet proof vest.  (*Id.* at ¶ 13.)  King was armed with a shotgun, "which had to be set down or held with two hands."  (*Id.*)  Plaintiff alleges upon information and belief that King was not wearing his duty belt, did not have his badge displayed, did not have handcuffs, and did not have a handgun or holster.  (*Id.*)  As the Decedent exited the Rhodes home, he observed King "holding something," and the Decedent informed Nichols of King's presence on the property.  (*Id.* at ¶ 14.)

At that moment, King advanced quickly towards the Decedent and Nichols while pointing the shotgun at the couple and ordering them to exit the vehicle and to get on the ground.  (*Id.* at ¶ 16.)  The couple both exited the vehicle, and Nichols knelt on the ground beside the truck.  (*Id.* at ¶¶ 17–18.)  The Decedent, however, was allegedly "scared and confused" and asked King why the Decedent was being ordered out of his vehicle on his family's property.  (*Id.* at ¶ 19.)  King continued his advance towards the Decedent, "aggressively screaming" at him to get on the ground.  (*Id.* at ¶ 20.)  Plaintiff alleges that King then threatened the Decedent, telling him "it would not bother him to 'blow [his] [] brains out.'"  (*Id.*) (obscenity omitted).  King, described

as "physically much bigger and stronger" than the Decedent, shoved him to the ground.   (*Id.* at ¶ 21.)   Plaintiff alleges that the Decedent did not resist King's efforts "in any way."   (*Id.* at ¶ 22.)

King then walked around the vehicle, positioning himself so that he could see both the Decedent and Nichols simultaneously.   (*Id.* at ¶ 23.)   King kept the shotgun aimed at the Decedent from his position.   (*Id.* at ¶ 24.)   The Decedent, who was lying on his back, then pulled his legs up as if attempting to stand.   (*Id.* at ¶ 25.)   King fired the shotgun at close range, hitting the Decedent in the face.   (*Id.*)   Following this shot, Nichols asked King if the Decedent was dead.   (*Id.* at ¶ 26.)   King allegedly responded, "Not yet, but he will be."   (*Id.*)   King then ordered Nichols to stand up, walk to the rear of the truck, face away from King, and then kneel and place her hands on her head.   (*Id.* at ¶ 27.)   Nichols complied.   (*Id.*)   King then called dispatch and reported that the Decedent was still breathing.   (*Id.* at ¶ 29.)   At some point, however, the Decedent passed away from his injuries.   (*Id.* at ¶ 30.)

Plaintiff has asserted three causes of action: Count I asserts "state-law negligent and reckless conduct in violation of clearly established laws" against Deputy King; Count II asserts "state-law negligent and reckless conduct in violation of clearly established laws" against the Commission, and; Count III asserts a deprivation of rights in violation of 42 U.S.C. § 1983 against both Defendants.   (*Id.*)

Defendants filed their pending Partial Motion to Dismiss on September 30, 2019.   (ECF No. 12.)   Plaintiffs responded in opposition to the motion on October 15, 2019.   (ECF No. 14.)   Defendants filed their reply on October 22.   (ECF No. 15.)   As such, this motion is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face."   *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"   *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).   Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."   *Iqbal*, 556 U.S. at 679.   This Court then "assume[s] the[ ] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief."

4

*Id.*  Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.*  "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

### III.   DISCUSSION

Defendants have moved for the dismissal of Counts I and II in their entirety, and Count III to the extent it is asserted against the Commission.  (ECF No. 13.)  Plaintiff, however, has appeared to combine several causes of action within each count of his complaint.   Therefore, the Court will conduct its analysis in the same order presented by the Defendants in their accompanying Memorandum of Law.   (ECF No. 13.)

### A.   State-Law Negligent and Reckless Conduct in Violation of Clearly Established Laws Against the Roane County Commission

Count II alleges a claim for "State-law negligent and reckless conduct in violation of clearly established laws" and is asserted against the Commission.  (ECF No. 2 at 11.)  In this claim, Plaintiff alleges that the Commission is "strictly and vicariously liable for the acts of Defendant King pursuant to W. Va Code § 29-12A-1 *et seq*." (*Id.* at ¶ 65.)  Plaintiff further claims that the Commission is liable for negligent hiring, negligent training, negligent supervision, negligent retaining, and for implementing policies and encouraging or condoning the use of excessive force by deputies.  (*Id.* at ¶ 67.)

Defendants assert two arguments for dismissal as to Count II.   First, Defendants argue that the Commission cannot be held liable for intentional acts of its employees, and that Plaintiff,

despite couching his allegations in terms of negligence, has only alleged intentional conduct.   (*Id.* at 5–7.)   Defendants also argue that Plaintiff has failed to allege sufficient facts to state claims against the Commission for claims of negligent hiring, training, and supervision, or for negligent retention.   (*Id.* at 7–9.)

> 1.   *Liability of the Commission under W. Va. Code § 29-12A-1* et seq.

Under the West Virginia Governmental Tort Claims and Insurance Reform Act (the "Act"), a political subdivision cannot be held liable for any act or omission by an employee in connection with a government or proprietary function, except in five instances.   W. Va. Code § 29-12A-4. Under the Act, a political subdivision can be held liable for only the following specific acts: (1) negligent operation of any vehicle by employees within the scope of employment; (2) negligent performance of acts by employees while acting within the scope of employment; (3) negligent maintenance of roads, sidewalks, and other similar pathways; (4) negligent act of an employee on political subdivision property; or (5) any other act in which liability is specifically imposed on the political subdivision by another section of the West Virginia Code.   W. Va. Code § 29-12A-4(c).

By the express terms of the Act, a political subdivision cannot be held liable for its employees' intentional malfeasance.   *See Mallamo v. Town of Rivesville*, 477 S.E.2d 525, 533– 34 (W. Va. 1996) ("In that conspiracy is an intentional act, not a negligent one, the Town of Rivesville would not be liable for any intentional malfeasance on the part of Wilson.").   "[C]laims of intentional and malicious acts are included in the general grant of immunity in W. Va. Code, 29–12A–4(b)(1)."   *Zirkle v. Elkins Road Public Serv. Dist.*, 655 S.E.2d 155, 160 (W. Va. 2007).

The thrust of Defendants' first argument is that despite Plaintiff asserting that Defendant King's conduct was "negligent and reckless," these conclusory allegations do not change the

nature of the factual allegations, which are of an intentional act.   (ECF No. 15 at 2.)   Plaintiff, however, maintains that his pleading of "negligent and reckless" conduct is in the alternative, and that under the Federal Rules of Civil Procedure, he can plead in the alternative even if such claims are inconsistent or mutually exclusive.   (ECF No. 14 at 2.)   *See also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

The acts alleged by the Plaintiff here, however, are only for intentional conduct.   As a rule, a plaintiff "[cannot] prevail on a claim of simple negligence based on [a defendant's] intentional act." *Smith v. Lusk*, 533 F. App'x 280, 284 (4th Cir. 2013) (citing *Stone v. Rudolph*, 32 S.E.2d 742, 748 (W. Va. 1944) (noting that "intentional acts are not encompassed by general negligence principles")); *Weigle v. Pifer*, 139 F.Supp.3d 760, 780 (S.D. W. Va. 2015) ("A mere allegation of negligence does not turn an intentional tort into negligent conduct.") (citations omitted).   This jurisdiction has long recognized the distinction between negligent conduct and conduct that supports an intentional tort.   *See, e.g.*, *Mandolidis v. Elkins Indus., Inc.*, 246 S.E.2d 907, 913–14 (W. Va. 1978)   As this Court has previously explained, "[c]onduct that supports a negligence claim can be distinguished from conduct that supports an intentional tort claim by examining the subjective intent of the alleged tortfeasor." *Weigle*, 139 F.Supp.3d at 780; *Mandolidis*, 246 S.E.2d at 913–14 ("The law of this jurisdiction recognizes a distinction between negligence, including gross negligence, and wilful [sic], wanton, and reckless misconduct. The latter type of conduct

requires a subjective realization of the risk of bodily injury created by the activity and as such does not constitute any form of negligence.") (superseded by statute on other grounds).

Plaintiff maintains in his briefing that he "has also alleged that the actions of Deputy King were simply negligent" and that no one knows "with absolute certainty what was going through Deputy King's mind the instant before his finger pulled the trigger[.]"   (ECF No. 14 at 3–4.) Therefore, Plaintiff maintains, he has adequately plead that King's conduct was both negligent and intentional, such that liability can be maintained against the Commission.

Plaintiff, however, has not alleged sufficient factual information to support a claim of negligence.   Plaintiff has essentially asserted a claim of excessive force under the Fourth Amendment, under which Defendant King's conduct is, logically, an intentional act.   *See, e.g.*, *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control.   A seizure occurs even when an unintended person or thing is the object of the detention or taking, . . . but the detention or taking itself must be willful.")   While Plaintiff is undoubtedly correct that he is entitled to plead in the alternative, even if such pleading is inconsistent, he relies on the very same facts that support his claim of excessive force under the Fourth Amendment.

Moreover, this Court cannot accept conclusory allegations as true.   *See Iqbal*, 556 U.S. at 679.   Plaintiff has alleged that Defendant King "shoved the decedent to the ground," (ECF No. 4 at ¶ 21), "continued to point his shotgun at [the Decedent]," (*Id.* at 24), and "fired his shotgun at close range, shooting [the Decedent] in his face."   (*Id.* at ¶ 25).   These are all factual allegations. Conversely, Plaintiff has alleged that this conduct was "negligent and reckless."   (*Id.* at ¶¶ 53–55, 66–67.)   This is a conclusory allegation, one which this Court cannot accept as true at this stage.

Alleging that this conduct was negligent and reckless "does not turn an intentional tort into negligent conduct." *Weigle*, 139 F.Supp.3d at 780 (internal quotation omitted).

Therefore, to the extent Plaintiff bases his negligence claim against the Commission on Defendant King's conduct, such claim fails because of the immunity provision afforded to the Commission under the Act.   Plaintiff has only alleged intentional conduct, which falls under the grant of immunity.   Defendants' motion is hereby **GRANTED** as to Count II to the extent it asserts liability against the Commission as a result of Defendant King's intentional conduct.

### 2. *Negligent Hiring, Training, Supervision, and Retention*

Defendants next argue that Plaintiff has not alleged sufficient facts to sustain a claim against the Commission for negligent hiring, training, supervision, or retention.   (ECF No. 13 at 7.)   Plaintiff counters that he has specifically identified several instances of excessive force by Defendant King and inaction by the Commission, such that his claim of negligent retention, supervision, and monitoring survives.   (ECF No. 14 at 6.)   Plaintiff, however, did not respond to the Defendants' argument regarding his claims of negligent hiring and training.   As such, Plaintiff has conceded those claims.   *See Brevard v. Racing Corp. of West Virginia*, Civ. Action No. 2:19-cv-578, 2020 WL 1860713 at *8 (S.D. W. Va. Apr. 13, 2020) (noting plaintiff abandoned claim by failing to respond to defendant's argument); *Taylor v. Clay Cty. Sheriff's Dep't*, No. 2:19-cv-00387, 2020 WL 890247, at *2 (S.D. W. Va. Feb. 24, 2020) (same); *Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion ... can indicate that the non-moving party concedes the point or abandons the claim.").

As this Court has previously explained, "[t]he torts of negligent retention and supervision are distinct from the theory of an employer's vicarious liability for an employee's torts." *Radford v. Hammons*, Civ. Action No. 2:14-24854, 2015 WL 738062 at *6 (S.D. W. Va. Feb. 20, 2015). Negligent retention and supervision focus entirely on the culpability of an employer for "retaining or failing to adequately supervise an employee whom the employer knew, or should have known, posed a risk to third parties." *Id.* at *7 (noting the difference between negligent retention and vicarious liability under the doctrine of respondeat superior, where an employer may be held liable for the tortious acts of employees committed within the scope of employment). Thus, if the employee later commits a tort, then the employer may be liable. *Id.* Generally speaking, the torts of negligent retention and supervision follow that of general negligence claims: The analysis examines whether the employer was on notice of the employee's propensity, yet unreasonably failed to take action, and the employee's tortious conduct results in harm to a third party. *Id.*

The Supreme Court of Appeals of West Virginia has articulated a test for a claim of negligent retention:

> When the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*State ex rel. West Virginia State Police v. Taylor*, 201 W.Va. 554, 499 S.E.2d 283, 289 n.7 (1997). Relatedly, negligent supervision requires a showing that the employer failed to properly supervise the employee, and that the employee proximately caused injury to the plaintiff. *Woods v. Town of Danville*, 712 F.Supp.2d 502, 515 (S.D. W. Va. 2010); *see also Taylor v. Cabell Hunting Hospital, Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000). The court must consider "the nature of the

10

employee's job assignment, duties and responsibilities." *McCormick v. W. Va. Dep't of Pub. Safety*, 503 S.E.2d 502, 507 (1998).   The duty with respect to hiring and retention increases "as the risks to third persons associated with a particular job increase." *Id.*   An "employer's duty is heightened" when the prospective employee is a police officer, as police officers are permitted to carry guns, to use necessary force to effect arrest, and to enter civilian residences under certain circumstances.   *Woods*, 712 F.Supp.2d at 514.

Here, Plaintiff has sufficiently plead claims based on negligent retention and negligent supervision.   Plaintiff has alleged, with specificity, three incidents involving Defendant King's threats to use or use of excessive force.   First, Plaintiff alleged that King had "unnecessarily pulled his weapon" while apprehending a man, and that the man's father reported this incident to Defendant King's supervisor, Sheriff Todd Cole.   (ECF No. 4 at ¶ 33.)   Plaintiff alleged that Sheriff Cole failed to investigate or otherwise "handle" this incident, despite the arrestee needing medical care for a laceration caused by King striking the man with his weapon.   (*Id.* at ¶ 34.) Plaintiff further alleged an incident where King unreasonably detained a minor when the minor's hat flew out the window of a school bus.   (*Id.* at ¶¶ 36–43.)   Plaintiff again alleges that Sheriff Cole failed to properly investigate this incident and instead condoned King's actions to the Commission.   (*Id.* at ¶ 41.)   Finally, Plaintiff alleges that King issued unlawful commands to a mother at a middle-school dance, where King had not been called to the scene, had his hand on his firearm, and was physically preventing the mother from leaving the premises.   (*Id.* at ¶¶ 44–49.) Plaintiff again alleges that Sheriff Cole and the Commission failed to take appropriate action.   (*Id.* at ¶ 50.)

Plaintiff's allegations, taken as a whole, satisfy the pleading requirements for claims of negligent retention and negligent supervision.   First, these allegations, taken as true, should have served to put the Commission on notice of Defendant King's alleged propensity for using excessive force or not following appropriate protocol.   Next, these allegations indicate that neither Sheriff Cole nor the Commission took appropriate action to quell or correct such behavior.   And finally, Plaintiff has alleged that King's conduct led to injury.   Plaintiff has sufficiently plead claims of negligent retention and negligent supervision on these allegations.

Therefore, for the reasons above, Defendants' motion is **GRANTED** as to Plaintiff's claims of negligent hiring and negligent training.   Defendants' motion is **DENIED** as to Plaintiff's claims of negligent retention and negligent supervision.

### B.  *State-Law Negligent and Reckless Conduct in Violation of Clearly Established Laws Against Defendant King*

Count I alleges a claim for "State-law negligent and reckless conduct in violation of clearly established laws" against Defendant King.   (ECF No. 4 at 9.)   Plaintiff alleges that Defendant King violated certain federal and state constitutional rights, "including, but not limited to, the right to be free from unreasonable searches and seizures and the right to due process prior to the deprivation of life and liberty protected by the West Virginia Constitution, Article III, Sections 2, 3, and 6, and also protected by the Fourth and Fourteenth Amendments of the United States Constitution."   (*Id.* at ¶ 57.)

Defendants again advance the argument that Plaintiff cannot assert negligence as the basis as a constitutional violation.   (ECF No. 13 at 10.)   Instead of negligence, Defendants maintain the facts asserted by the Plaintiff are for the excessive use of force, which is necessarily an intentional act.   (*Id.*)   Therefore, Defendants argue for the dismissal of Count I because "a mere

allegation of negligence cannot turn an intentional tort into negligent conduct." (*Id.* (quoting *Weigle*, 139 F.Supp.3d at 780).)

Despite Plaintiff's creative argument of what Deputy King was thinking as he approached the scene, (*see* ECF No. 14 at 3–4), what Plaintiff has alleged factually is an intentional tort. *See* Part A.1, *supra*. And while Plaintiff is certainly entitled by the Rules of Civil Procedure to plead claims in the alternative, even if those claims are contradictory or inconsistent, that does not change the factual basis of his negligence claim. Alleging that King's conduct was negligent "does not turn an intentional tort into negligent conduct." *Weigle*, 139 F.Supp.3d at 780 (internal quotation omitted).

Therefore, Defendants' motion is **GRANTED** to the extent that Count I asserts a claim of negligence against Deputy King.

### C. Monell Claim

Count III asserts a cause of action against both Deputy King and the Commission for the deprivation of rights and is brought under 42 U.S.C. § 1983. (ECF No. 4 at 14.) Specific to the Commission, Plaintiff claims that the Commission is liable "because Defendant King's conduct not only occurred while acting under the aegis of the [Commission], but also, upon information and belief, resulted directly from the express written or unwritten customs and policies of [the Commission]." (*Id.* at ¶ 74.) Defendants argue for the dismissal of Count III as to the Commission because Plaintiff has failed to allege that the deprivation of rights was pursuant to a policy or custom of the Commission. (ECF No. 13 at 11.)

First, a municipality may be liable under § 1983 if the municipality itself subjects an individual to a deprivation of rights or causes an individual to be subjected to such deprivation.

13

*Connick v. Thompson*, 563 U.S. 51, 59 (2011) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)).   Under § 1983, municipalities are responsible only for "their own illegal acts."   *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665–83).   Municipalities are not vicariously liable for their employees' actions under § 1983. *Monell*, 436 U.S. at 691.

Thus, to prove a § 1983 claim against a municipality, a plaintiff must prove that the action that caused their injury was "pursuant to official municipal policy."   *Id.* at 691, 694.   A plaintiff asserting a § 1983 claim against a municipality, then, must plead "(1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right."   *Poe v. Town of Gilbert, West Virginia*, Civ. Action No. 2:11-cv-00645, 2012 WL 3853200 at * 4 (S.D. W. Va. Sep. 5, 2012) (quoting *Alexander v. City of Greensboro*, 762 F.Supp.2d 764, 781 (M.D.N.C. 2011).

*Poe* instructs how a policy or custom may become attributable to a municipality:

A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Id.* (quoting *Alexander*, 762 F.Supp.2d at 781).   *See also Jordan ex rel Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir.1994).

Plaintiff appears to argue that an official policy or custom can be shown here through the decisions of Sheriff Cole or the Commission as a final policymaking authority and through a failure to supervise Defendant King resulting in the depravation of constitutional rights.   (ECF No. 14 at

14

9–10.)   For many of the same reasons as Plaintiff successfully pleading negligent retention and supervision claims, Plaintiff has successfully plead a *Monell* claim here.

First, Plaintiff has alleged three specific incidents which, taken as true, plausibly establishes a "pattern of constitutionally offensive acts" by King at this stage of the proceedings. (ECF No. 4 at ¶¶ 32-50.)   Further, Plaintiff has alleged that although Sheriff Cole knew of these incidents and potentially others, neither he nor the Commission took any action against King or otherwise corrected such behavior.   Finally, Plaintiff has alleged that this same inaction led directly to King fatally shooting the Decedent in the case at hand.   At this stage in the proceedings, Plaintiff has sufficiently plead a plausible *Monell* claim against the Commission.

Therefore, Defendants' motion is **DENIED** as to Count III to the extent it is asserted against the Commission.

### D.  Fourteenth Amendment Claims

Included in Count I of his Complaint, Plaintiff has asserted a due process claim under the Fourteenth Amendment against Defendant King.   (ECF No. 4 at ¶ 57.)   Defendants argue for the dismissal of this due process claim because Plaintiff has premised this action on a Fourth Amendment excessive force claim.[1]   (ECF No. 13 at 15.)   Therefore, Defendants argue that the Fourteenth Amendment due process claim cannot survive because the Fourth Amendment provides the specific constitutional right at issue.   (ECF No. 15 at 12.)

---

[1] Plaintiff apparently misconstrues this argument in that he argues that "the Fourteenth Amendment is necessary, if for no other purpose, to make the Fourth Amendment binding on the states, including West Virginia, as the Fourth Amendment by its own terms applies only to actions taken by the United States government."   (ECF No. 14 at 11.) Defendants, however, appear to argue that without additional factual allegations sufficient to support a due process violation, the Plaintiff's claim must proceed under the Fourth Amendment.   (*See* ECF No. 15 at 12–13.)

15

The Supreme Court of the United States has stated that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or the Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).   The Supreme Court has further explained the issue:

> Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. . . . Today we . . . hold that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal citations omitted).   *See also Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016).

Here, Plaintiff has alleged a Fourth Amendment claim of excessive force.   Because Plaintiff's constitutional claim is covered by a specific constitutional provision, his claim must be analyzed pursuant to that standard.   Therefore, Plaintiff's excessive force claim is properly analyzed under the Fourth Amendment's objective reasonable standard, and not the more generalized notion of due process.   *See Graham*, 490 U.S. at 395.

Defendants' motion is hereby **GRANTED** as to Plaintiff's claim of due process brought under the Fourteenth Amendment.

16

### E.  State Constitutional Tort Claims

Also included within Count I of his Complaint, Plaintiff alleges that Deputy King violated the Decedent's constitutional rights under Article III, Sections 2, 3, and 6 of the West Virginia Constitution.   (ECF No. 4 at ¶ 57.)   Generally, Defendants argue that Plaintiff has failed to make a particularized showing to support a state constitutional violation, but that also his claims fail as a matter of law because money damages for constitutional violations have been consistently found to be unavailable under Article III.    (ECF No. 13 at 16.)    Plaintiff rejects Defendants' "critici[sm]" of his reliance on several provisions of the state constitution, (ECF No. 14 at 11), but also asserts that the West Virginia Supreme Court of Appeals has explicitly allowed claims for money damages for constitutional violations in *Hutchinson v. City of Huntington*, 479 S.E.2d 649 (W. Va. 1996).   (ECF No. 14 at 11.)

Article III, § 2 of the West Virginia Constitution states, "All power is vested in, and consequently derived from, the people.   Magistrates are their trustees and servants, and at all times amenable to them."   Article III, § 2 mandates "accountability to the citizenry by all officers and employees of the body politic in this State."   *Mason Cty. Bd. of Educ. v. State Superintendent of Schools*, 274 S.E.2d 435, 439 (W. Va. 1980).   To this Court's knowledge, Article III, § 2 has never been found to create a state-law cause of action for money damages.   However, even assuming a cause of action did exist, Plaintiff has failed to plead sufficient factual allegations to support a claim under this provision.   Therefore, Defendants' motion is **GRANTED** as to Plaintiff's claim under Article III, § 2 of the West Virginia Constitution.

Article III, § 3 of the West Virginia Constitution is an equal protection clause.   *See United Mine Workers of Am. Int'l Union v. Parsons*, 172 W. Va. 386, 398, 305 S.E.2d 343, 354 (1983).

17

In pertinent part, it states, "[g]overnment is instituted for the common benefit, protection and security of the people, nation or community."   W. Va. Const. Art. III, § 3.   This provision of the state constitution imposes an obligation upon the state to "preserve its neutrality" and serves a goal of "fundamental fairness."   *Parsons*, 172 W. Va. at 398, 305 S.E.2d at 354.   Under the Fourteenth Amendment of the United States Constitution, an equal protection claim requires a showing "that [the plaintiff] has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."   *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).   This Court has not found any instance of this provision being applied in this manner.   In the few applications of this equal protection provision, however, what is required is government neutrality.   *See Women's Health Center of West Virginia, Inc. v. Panepinto*, 446 S.E.2d 658, 667 (W. Va. 1993) ("[W]e hold that when state government seeks to act 'for the common benefit, protection and security of the people' in providing medical care for the poor, it has an obligation to do so in a neutral manner so as not to infringe upon the constitutional rights of our citizens."); *Parsons*, 305 S.E.2d at 354 (requiring government neutrality when state agency sells advertising for broadcast).   Under either the equal protection or government neutrality analysis, Plaintiff has failed to allege how he was treated differently from other similarly situated to him or how the government was otherwise unneutral. Therefore, Defendants' motion is **GRANTED** as to Plaintiff's claim under Article 3, § 3 of the West Virginia Constitution.

Article III, § 6 parallels the Fourth Amendment of the United States Constitution.   *See State v. Duvernoy*, 156 W. Va. 578, 582, 195 S.E.2d 631, 634 (1973) ("This Court has traditionally construed Article III, Section 6 in harmony with the Fourth Amendment.").   Section 6 states that

"[t]he rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated." W. Va. Const. Art. III, § 6.

Whether Article III of the West Virginia Constitution gives rise to a private cause of action for money damages is a point of dispute among the federal courts of this state. *See Harper v. Barbagallo*, No. 2:14-cv-07529, 2016 WL 5419442, at *12 (S.D. W. Va. Sept. 27, 2016) (discussing *Harrah v. Leverette*, 271 S.E.2d 322, 330 (W. Va. 1980)) (collecting cases).   In particular, this Court has routinely held that claims for money damages are not available to remedy violations of Article III of the state constitution.  *See Nutter v. Mellinger*, 2:19-cv-00787, 2020 WL 401790, at *6 (S.D. W. Va. Jan. 23, 2020); *Howard v. Ballard*, No. 2:13–cv–11006, 2015 WL 1481836, at *4 (S.D. W. Va. Mar. 31, 2015); *McMillion-Tolliver v. Kowalski*, No. 2:13-CV-29533, 2014 WL 1329790, at *2 (S.D.W. Va. Apr. 1, 2014); *Smoot v. Green*, No. 2:13–10148, 2013 WL 5918753, at *4–5 (S.D. W. Va. Nov. 1, 2013).   The West Virginia Supreme Court of Appeals has never, to this Court's knowledge, addressed the issue directly.[2]

Left without guidance from the West Virginia Legislature or the courts, this Court most recently certified this question as to Article III, § 6 to the West Virginia Supreme Court of Appeals for resolution in *Fields v. Mellinger*, 2:19-cv-00493 (S.D. W. Va. Mar. 3, 2020). The Court is awaiting a decision from the West Virginia Supreme Court of Appeals as to whether it will accept the question presented in *Fields*.   **If Plaintiff intends to proceed with this claim, the Court will stay this action pending a final decision from the West Virginia Supreme Court of Appeals.**

---

[2] The West Virginia Supreme Court has held that "[u]nless barred by [a recognized immunity], a private cause of action exists where a municipality or local government unit causes injury by denying that person rights that are protected by the Due Process Clause embodied within Article 3, § 10 of the West Virginia Constitution." *Hutchinson*, 479 S.E.2d at 654 (1996).   However, the *Hutchinson* court did not address whether its holding was limited to § 10 or, alternatively, applied to other rights enshrined in Article III.

Plaintiff is **DIRECTED** to notify this Court in writing and within seven (7) days of this order whether he intends to pursue these claims or if he will dismiss them voluntarily to avoid a stay in this case.

### F. Punitive Damages

Finally, Defendants argue that Plaintiff's claim for punitive damages against the Commission should be dismissed because such damages are not available against municipalities under § 1983 claims or under W. Va. Code § 29-12A-7(a).   Plaintiff failed to respond to this argument, and therefore he is deemed to have conceded his claim for punitive damages against the Commission.   *See Brevard*, 2020 WL 1860713 at *8; *Taylor*, 2020 WL 890247, at *2; *Blankenship*, 2018 WL 3581092, at *9.   Defendants motion is **GRANTED** as to Plaintiff's claim for punitive damages against the Commission.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss, (ECF No. 12), is **GRANTED IN PART** and **DENIED IN PART**.   Plaintiff's claims of state law negligence and reckless conduct against the Commission based on Deputy King's conduct, negligent hiring, negligent training, state law negligence against Deputy King, a violation of due process under the Fourteenth Amendment, and the violations of Article III, §§ 2 and 3 are hereby **DISMISSED.**


**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      August 11, 2020

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE