**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**TRAVIS RHODES, as Personal
Representative of the Estate of
TIMOTHY E. RHODES,**

       **Plaintiff,**

**v.**                           **Civil Action No.:  2:19-cv-00626**

**DEPUTY SHERIFF MICHAEL KING,
and THE ROANE COUNTY COMMISSION,**

       **Defendants.**

**AND**

**MELISSA FIELDS, as Personal
Representative of the Estate of
MICHAEL A. NICHOLS,**

       **Plaintiff,**

**v.**                           **Civil Action No.: 2:21-cv-00090**

**DEPUTY SHERIFF MICHAEL KING,
SHERIFF L. TODD COLE,
and the ROANE COUNTY COMMISSION,**

       **Defendants.**

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND/OR STAY

    **COME NOW** the Defendants, Deputy Sheriff Michael King, Sheriff L. Todd Cole, and the Roane County Commission, by counsel, Wendy E. Greve, Drannon L. Adkins, and the law firm of Pullin, Fowler, Flanagan, Brown & Poe, PLLC, and for their *Motion for Protective Order and/or Stay* states as follows:

1

1.      These cases have been consolidated for discovery purposes. ECF No. 53 (*Rhodes*); ECF No. 10 (*Fields/Nichols*).

2.      As is commonplace in officer-involved shootings, an outside agency (the West Virginia State Police) is conducting an investigation concerning the *Fields/Nichols* incident.   Since learning of the *Fields/Nichols* incident, undersigned counsel has periodically inquired with the State Police regarding the status of its investigation. The undersigned has also been in periodic contact with the special prosecutor who has been assigned to review the incident.

3.      On June 8, 2021, Plaintiff filed Amended Notices of Depositions for Deputy King, setting the deposition for June 4, 2021. ECF No. 57 (*Rhodes*); ECF No. 22 (*Fields/Nichols*).

4.      Prior to the amended notices being filed, undersigned again contacted the special prosecutor assigned to the case to inquire as to the status of the investigation and was informed that the investigation was still ongoing and had not yet been completed.

5.      Subsequent to that conversation, the undersigned learned that the special prosecutor made a presentment to the Roane County Grand Jury concerning the incident involving Mr. Nichols. Upon information and belief, the Grand Jury did not finish its deliberations on the day of the presentment.  Upon information and belief, the Grand Jury requested that additional information be presented to it and that the Grand Jury apparently scheduled to reconvene in early July to consider such information.

6.      Due to the ongoing investigation into the events of the incident involving Mr. Nichols, Defendants move the Court for a protective order and/or to stay Deputy King's deposition until the conclusion of the investigation.

7.      "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." <u>Landis v. North American Co.</u>, 299 U.S. 248, 254 (1936). Because of the frequency with which civil and regulatory laws overlap criminal laws, American jurisprudence contemplates the possibility of simultaneous or virtually simultaneous parallel proceedings and the Constitution does not mandate the stay of civil proceedings in the face of parallel criminal proceedings. <u>SEC v. Dresser</u>, 628 F.2d 1368, 1374-75 (D.C. Cir. 1980); *see also* <u>Keating v. Office of Thrift Supervision</u>, 45 F.3d 322, 324 (9th Cir. 1995) ("the Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.").

8.      "Nevertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem [] to require such action, sometimes at the request of the prosecution, […] sometimes at the request of the defense [.]'" <u>Dresser</u>, 628 F.2d at 1375 (*quoting* <u>United States v. Kordel</u>, 397 U.S. 1, 12 n. 27 (1970); <u>United States v. Any and All Assets of That Certain Business Known as Shane Co.</u>, 147 F.R.D. 99, 101 (M.D.N.C. 1993) ("the public has an interest in law enforcement which may, under proper circumstances, be given priority over concurrent civil proceedings."); <u>United States v. Georgia Pacific Corp.</u>, 562 F.2d 294, 296 (4th Cir. 1977) (noting that a motion to stay proceedings is committed to the sound discretion of the court).

9.      In *Keating*, the Ninth Circuit stated that the following factors should be considered in the exercise of that discretion:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential

> prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interest of persons not parties to the civil litigation;  and (5) the interests of the public in the pending civil and criminal litigation."

45 F.3d at 324-325.

10.     The United States District Court for the Southern District of West Virginia adopted these factors in Ashworth v. Albers Med., Inc., 229 F.R.D. 527, 530 (S.D. W.Va. 2005), and added another factor to consider—whether the civil and criminal proceedings "involve substantially similar issues." 229 F.R.D. at 531; *see also*, Blanda v. Martin & Seibert, L.C., 2017 U.S. Dist. LEXIS 2169, at *8 (S.D.W.Va. 2017).

11.     As to relatedness, the requirement of the existence of a nexus between the parallel proceedings is sufficient to show that such proceedings are related and involve substantially similar issues is the threshold factor for a stay. Ashworth, 229 F.R.D. at 530; Blanda, 2017 U.S. Dist. LEXIS 2169, at *8. Without question, the ongoing investigation being conducted by the West Virginia State Police is related to and involves the precise issue as the civil action in this matter.  The West Virginia State Police is investigating whether Deputy King's use of force against Mr. Nichols was justified or whether the use of force constitutes a violation of the State's criminal laws.

12.     The delay in staying this case will not prejudice the Plaintiffs, regardless of whatever argument they may make to the contrary.  It is inconceivable that Plaintiffs would suffer any prejudice except for the right to speedily proceed through the judicial system. However, any right to expeditious resolution of the civil claims may be trumped. Ashworth, 229 F.R.D. at 531 (*citing* Bridgeport Harbour Place I. LLC v. Ganim, 269 F.Supp.2d 6

(D.Conn. 2002). "Delays in civil cases are fairly common" and Plaintiff is "protected from monetary harm cause by the delay by [her] ability to obtain interest as part of [her] ultimate judgment." Walsh Secs. v. Cristo Prop. Mgmt., 7 F.Supp.2d 523, 528 (D.N.J. 1998). Moreover, permitting the criminal matter to proceed could benefit Plaintiff to the extent that Deputy King will be able to provide more complete testimony and discovery responses once the investigation concludes in his favor, or could ease their burdens of proof should the investigation not be in Deputy King's favor.

13.    As to the burden upon the Defendants, forcing Deputy King to sit for a deposition while a parallel criminal investigation is ongoing infringes upon his Fifth Amendment rights. The Supreme Court "has always broadly construed [the Fifth Amendment's] protection to assure that an individual is not compelled to produce evidence [in a civil case] which later may be used against him as an accused in a criminal action." Maness v. Meyers, 419 U.S. 449, 461 (1975); Lefkowitz v. Turley, 414 U.S. 70, 77 (1973) (the Fifth Amendment privileges a witness "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings"). Moreover, "a witness may have a reasonable fear of prosecution and yet be innocent of any wrongdoing. The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." Slochower v. Bd. of Higher Ed. of City of New York, 350 U.S. 551, 557 58 (1956).

14.    And if Deputy King opts to invoke his Fifth Amendment privilege, that refusal to answer may be used as an adverse inference in these actions. *See* Morley v. Cohen, 888 F.2d 1006, 1012 (4th Cir. 1989).    However, "'[w]here invocation of the fifth

5

amendment imposes undue sanctions or penalties on a defendant, a court may in its discretion stay proceedings [or] postpone civil discovery.'" Javier H. v. Garcia-Botello, 218 F.R.D. 72, 75 (W.D.N.Y. 2003). Thus, "[i]n this context 'penalty' is not restricted to fine or imprisonment. It means ... the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" Wehling, Wehling v. CBS, 608 F.2d 1084, 1088 (5th Cir. 1979). As noted in Ashworth,

> Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case.

Ashworth, 229 F.R.D. at 531 (quoting Dresser, 628 F.2d at 1375-76).  Thus, Deputy King would be forced to face Morton's fork[1] of either (1) waiving his Fifth Amendment privilege by testifying fully, thereby possibly incriminating himself; or (2) invoke his Fifth Amendment privilege, leading to an adverse inference which would damage his ability to defend these cases.

In Brock v. Tolkow, 109 F.R.D. 116 (E.D.N.Y. 1985), the court denoted precisely how this dilemma is borne out:

> If the defendants are served with interrogatories in the civil case, they must decide whether to respond or to assert their rights under the Fifth Amendment. If they choose the former course, they risk providing the government with leads or evidence that may be used against them in the criminal case. If they choose the latter course, they greatly increase the chance that they be found liable in civil case for substantial sums of money. A stay of civil discovery until after

---

[1] Morton's fork is a situation involving two unattractive alternatives. S.E.C. v. Arias, No. CV 12-2937 (ADS) (GRB), 2012 U.S. Dist. LEXIS 147509, *14 n.7 (E.D.N.Y. Sept. 14, 2012).

criminal proceedings are complete will enable them to defend the
civil case vigorously without fear of subsequent prosecution.

Id. at 120. Similarly, given that civil discovery is much broader than what is permitted in
criminal cases, it could prematurely disclose a potential defense or strategy to criminal
charges for which the government would not yet be entitled. SEC v. Chestman, 861 F.2d
49, 50 (2nd Cir. 1988); *see also* Dresser, 628 F.2d at 1375-76 (noting that prejudice to a
criminal case might result from the availability of broader discovery in the parallel civil
action). Thus, this factor weighs heavily in favor of Deputy King until the criminal
investigation is concluded.

15.     Granting the stay may be convenient for the court inasmuch as "the
resolution of the criminal case may later streamline discovery in the civil case." Ashworth,
229 F.R.D. at 532 (*quoting* Bridgeport Harbour Place I, 269 F.Supp. 2d at 9 (D. Conn.
2002).  However, a stay could also burden the Court as it could also "halt the civil litigation
indefinitely, without any predictability as to when the case would return to the court's
active docket." Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp. 2d 573, 580
(S.D.N.Y. 2001).  Nevertheless, "concern about an indefinite stay may be alleviated by
allowing the parties to petition the Court to lift or modify the stay if there is a change in
circumstances warranting it. Walsh, 7 F.Supp.2d at 528-529. Thus, this factor is a wash.

16.     As to the interests of third-parties and the public, the public interest weighs
in favor of a stay because the public has more of an interest is seeing the criminal
investigation proceed than it does in seeing Plaintiff's private claim be resolved quickly.
See, e.g., Ashworth, 229 F.R.D. at 532 (holding that, while "the West Virginia public ha[d]
an interest in the resolution of plaintiff's claims, that interest pales in comparison to the
public interest as a whole in unraveling the criminal counterfeit scheme and punishing

those responsible for that scheme"); *see also* Walsh, 7 F. Supp. 2d at 529 (public interest weighed in favor of a stay where it would cause no tangible harm to the public and the stay would permit the criminal investigation to be completed unimpeded). Similarly, the government has a strong interest in an unimpeded investigation. *See* Ashworth, 229 F.R.D. at 532. In fact, it is not uncommon for the government itself to request a stay of a civil case to maintain the integrity of an investigation or criminal proceeding. *see generally*, Ashworth, 229 F.R.D. 527.

17.     Without a protective order and/or stay, Deputy King will likely have to invoke his Fifth Amendment privilege at the depositions, which may result in an adverse inference instruction, and which would, of course, prejudice not only Deputy King, but also potentially prejudice former Sheriff Cole and the Roane County Commission. Moreover, should the deposition be allowed to proceed in parallel to the West Virginia State Police's investigation and such investigation nevertheless yields no charges or convictions, without a stay or protective order, his prior invocation of his Fifth Amendment privilege would still subject him to an adverse inference. This prejudice, undue burden, and expense can be avoided by issuance of a stay and/or protective order. For the reasons aforesaid, good cause exists for the issuance of a protective order pausing Deputy King's deposition until the WVSP investigation has concluded.

**WHEREFORE**, these Defendants respectfully request a Protective Order to Stay Discovery until after the West Virginia State Police's investigation ceases and the Roane County Grand Jury completes its review of the presentment. Pursuant to *Ashworth*, Deputy King has shown it is in the interest of justice to pause said depositions. These Defendants request any and all other such further relief, including costs and attorneys'

fees, whether legal or equitable in character, as to which they may be entitled and to which this Court deems just and proper.

DEPUTY MICHAEL KING, SHERIFF L. TODD COLE, and the ROANE COUNTY COMMISSION

**By Counsel,**


*/s/ Drannon L. Adkins*
Wendy E. Greve, WV State Bar No. 6599
Drannon L. Adkins, WV State Bar No. 11384


***PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC***
JamesMark Building
901 Quarrier Street
Charleston, WV  25301
Telephone:   (304) 344-0100
Facsimile:     (304) 342-1545

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**TRAVIS RHODES, as Personal
Representative of the Estate of
TIMOTHY E. RHODES,**

     **Plaintiff,**

**v.**                        **Civil Action No.:  2:19-cv-00626**

**DEPUTY SHERIFF MICHAEL KING,
and THE ROANE COUNTY COMMISSION,**

     **Defendants.**

**AND**

**MELISSA FIELDS, as Personal
Representative of the Estate of
MICHAEL A. NICHOLS,**

     **Plaintiff,**

**v.**                        **Civil Action No.: 2:21-cv-00090**

**DEPUTY SHERIFF MICHAEL KING,
SHERIFF L. TODD COLE,
and the ROANE COUNTY COMMISSION,**

     **Defendants.**

**CERTIFICATE OF SERVICE**

    I hereby certify that on **the 2nd of July 2021** I electronically filed the foregoing

***DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND/OR STAY***, with the Clerk of

the Court using the CM/ECF system which will send notification of such filing.

10

L. Dante' diTrapano
Alex McLaughlin
Benjamin D. Adams
Calwell Luce diTrapano, PLLC
500 Randolph Street,
Charleston, WV  25302

R. Booth Goodwin II
Benjamin B. Ware
Stephanie H. Daly
Goodwin & Goodwin, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301

*/s/ Drannon L. Adkins*
Wendy E. Greve, WV State Bar No. 6599
Drannon L. Adkins, WV State Bar No. 11384

**PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, WV  25301
Telephone:        (304) 344-0100
Facsimile: (304) 342-1545